Judge Berman

**08 CV 5362**

ECF

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------x

CITIGROUP GLOBAL MARKETS INC.
d/b/a SMITH BARNEY,                                       CV.:

                              Plaintiff,

                                                          COMPLAINT

        -against-

JWS 1999 HOLDING B.V.,

                              Defendant.



RECEIVED
JUN 1 2 2008
U.S.D.C. S.D.N.Y.
CASHIERS

----------------------------------------------------x

        Plaintiff CITIGROUP GLOBAL MARKETS INC., doing business as Smith

Barney, by its attorneys, Alonso, Andalkar, & Kahn P.C., herein complain of Defendant,

JWS 1999 Holding B.V., as follows:

## I. JURISDICTION AND VENUE

        1.   This Court's subject matter jurisdiction is pursuant to 28 U.S.C. § 1332,

because this is an action between an alien and a citizen of a State, and the amount in

controversy, exclusive of interests and costs, exceeds Seventy Five Thousand and 00/100

($75,000.00) Dollars.

        2.   Venue is properly asserted in this District pursuant to 28 U.S.C. §1391 (a) (2),

because a substantial part of the events giving rise to the claims occurred in this District.

Plaintiff's principal office is located in Manhattan.

        3.   As alleged more fully herein, by agreement, all parties consented to the

submission of jurisdiction of the federal courts in the Southern District of New York with

respect to any proceeding arising out of and relating to the agreement, where plaintiff is

located.

## II. PARTIES

4.      Plaintiff Citigroup Global Markets Inc. d/b/a Smith Barney [hereinafter "Plaintiff" or "Smith Barney"] is a corporation organized under the laws of Delaware with its principal place of business located in the City, County and State of New York. Plaintiff is in the business of securities brokerage and the provision of other financial services. Plaintiff is doing business as Smith Barney with respect to this action set forth herein.

5.      On information and belief, Defendant JWS 1999 Holding B.V. is a privately-owned, Dutch corporation with its principal place of business located at Havikweg 11, 3334 BJ Zwijndrecht, the Netherlands.

## III. NATURE OF THE ACTION

6.      This action stems from Defendant's breach of a Client Agreement executed by the parties. Commencing on or about April 3, 2005, Defendant opened a Futures Account ["International Account"] with Smith Barney by executing an International Account Application and Client Agreement ["Client Agreement"].

7.      The Client Agreement provided, *inter alia*, that Smith Barney would open an international futures account, assigned account No. 86B-05925-1-2-110.

8.      By executing an International Account Application and Client Agreement, Defendant agreed that he would pay on demand any balance owing with respect to any of his accounts, including interests and commissions and any costs of collection (including attorneys' fees, if incurred by him).

9.      By executing an International Account Application and Client Agreement Defendant further agreed that Smith Barney had the authority, in its sole discretion, to sell, assign, transfer and deliver all or any part of Defendant's property which may be in Smith Barney's possession or control in any manner Smith Barney deems appropriate,

moreover make any necessary purchases to cover short sales and/or any open commodity contact positions and/or to cancel any outstanding orders.

10.    In or about April 2005, Defendant also completed a Customer Profile Sheet in which Defendant stated that he had over ten (10) years of experience in futures trading and was prepared to accept an "aggressive" level of risk.

11.    On or about April 3, 2005, while residing in Holland, Defendant executed a Smith Barney Futures Account Agreement and Forms ["Futures Account Agreement"].

12.    By executing this Futures Account Agreement, the Defendant received notice that transactions in futures may result in a margin deficit and Defendant would be liable for any resulting deficit.

13.    Paragraph 4, designated "Your Payment Obligations" of Part I of the Futures Account Agreement, provided as follows:

> With respect to every Contract purchased, sold or cleared for your Account, You shall (b) pay CGM [Plaintiff] upon demand (i) all commissions and fees at rates mutually agreed upon, (ii) all contract market, clearing house or clearing firm fees or charges, (iii) any tax or fee imposed on such transactions by any competent authority, including any self-regulatory organization, (iv) the amount of any trading losses in Your [Defendant] Account, (v) any debit balance or deficiency remaining in Your [Defendant] Account upon liquidation.

14.    Paragraph 6, designated "Events of Default and CGM's Rights on Default" of Part I of the Futures Account Agreement, provided as follows:

> Upon the occurrence of any Event of Default, CGM [Plaintiff] shall have the right, in addition to any other remedy available to CGM at law or in equity, to liquidate any or all open Contracts held in Your [Defendant] Account by any means of lawful disposition (including through any exchange of futures for physicals, block trade, or similar transaction permitted under applicable exchange rules), to apply any of Your cash, securities or other property held by or for CGM or any of CGM's affiliates

> toward amounts payable by You [Defendant] hereunder, to
> reduce any amounts due and owing to You [Defendant] by
> setting off against such amounts any amounts due to CGM
> or any of CGM's affiliates by You [Defendant] and to
> convert any such amounts or the net of such amounts to a
> single currency, to hedge positions in Your [Defendant]
> Account, and to take any other action in respect of Your
> Account, all in a commercially reasonable manner and all
> without further demand for margin and without notice or
> advertisement . . . .

15.    By executing this Futures Account Agreement, the Defendant agreed to

pay Smith Barney upon demand (i.) the amount of any and all trading losses in

Defendant's account, (ii.) any debit balance of deficiency remaining in Defendant's

account upon liquidation of any Contract held in his account (iii.) and any interest on any

debit balance remaining in his account at an overnight rate customarily charged by Smith

Barney, together with all reasonable costs and expenses incurred in collecting any such

debit balance.

16.    By executing the Futures Account Agreement, the Defendant further

agreed that the interpretation and enforcement of said Agreement shall be governed by

the laws of the state of New York without giving effect to its conflicts of law principles.

17.    By executing the Futures Account Agreement, the Defendant further

agreed to submit to the jurisdiction of the courts of State of New York and of the federal

courts in the Southern District of New York with respect to any proceeding arising out of

and relating to the Futures Account Agreement.

18.    On May 3, 2005, Defendant executed a day trade of 1 million (1,000,000)

Eurodollars before any monies were deposited by Defendant into the International

Account.

19.    On May 4, 2005, Defendant transferred One Hundred Forty Nine

Thousand Nine Hundred Eight Seven and 50/100 (149,987.50) Eurodollars into its

Account No. 86B-05925-1-2-110 and commenced day trading in the foreign exchange

market (i.e., Forex Market).

- 4 -

20.    On August 25, 2005, Plaintiff executed an Access Account Maintenance Form approving a future and commodity margin limit increase to Two Hundred Thousand and 00/100 ($200,000.00) Dollars, which included the trading of Crude Oil ("CL"), Silver ("SI"), Gold ("GC"), Aluminum ("AL"), and Copper ("HG") Contracts.

21.    Defendant had a Two Hundred Thousand and 00/100 ($200,000.00) Dollar limit for day trading (i.e., a limit on how many postings open over night in the futures market).

22.    For September, 2005, Defendant had Four Hundred Fifteen Thousand Three Hundred Seventy-Eight and 18/100 ($415,378.18) Dollars in its International Account.

23.    As of October 31, 2005, Defendant had Forty Thousand Two Hundred Forty Six and 44/100 ($40,246.44) Dollars in its International Account.

24.    As of November 1, 2005, Defendant had Ninety Thousand and 00/100 ($90,000.00) in his Account.

25.    On November 2, 2005, Defendant's net worth or account value was $322,748.91, which this increase was the result of the performance of the long Eurodollar position which appreciated (Defendant had 20,000,000 long as of November 1, 2005 and other trading he did in Eurodollars that day).

26.    On November 2, 2005, Defendant lost approximately Twenty Three Thousand and 10/100 ($23,000.00) Dollars on 200 crude oil (i.e., NMX Light Crude Oil) contracts, as such Defendant made no performance on futures trading.

27.    On November 3, 2005, in the futures market, Defendant bought 200 contracts of NMX LS Crude Oil. Defendant also sold 200 contracts of NMX LS Crude Oil. As a result of these oil contracts, Defendant suffered a loss of Two Hundred and Four Thousand Six Hundred Fifty Three ($204,653.00) Dollars. No margin report was issued regarding the International Account on this date.

28.    On November 3, 2005, in the FX market, Defendant bought a Euro Position of One (1) position of Twenty (20) Million Euros and Three (3) separate positions of Ten (10) Million Euros to total a position of Fifty (50) Million Euros long. During the same period Defendant sold two (2) positions of Ten (10) Million Euros to total a position of Thirty (30) million long open position at the close of trading for that day, November 3, 2005.

29.    As of November 3, 2005, Defendant had a margin deficit balance of Sixty One Thousand Seven Hundred Forty and 97/100 ($61,740.97) Dollars.

30.    On November 4, 2005, Defendant had no positions open on the futures market, however, Defendant still wanted his positions open in the Forex market and thus gave instruction to Plaintiff that its positions remain open in the Forex market.

31.    On November 4, 2005, due to Defendant's margin deficit balance of Sixty One Thousand Seven Hundred Forty and 97/100 ($61,740.97) Dollars as well as a long 30,000,000 euros position in the Forex market, the Defendant did not have enough funds in its International Account to cover the commodity/futures margin requirement. Thus, a margin call was posted on Defendant's account to bring his account to a flat position in the Forex market.

32.    On November 4, 2005, Defendant instructed Plaintiff through written correspondence to keep intra-day foreign exchange positions open, which entailed buying and selling Euros.

33.    By fax correspondence dated November 4, 2005, as well as verbal communications, Defendant advised Plaintiff that he would undertake to pay any losses arising from any trades made as per close of trading on said date.

34.    Specifically, on November 4, 2005, Defendant sold the Thirty (30) Million Euros he had long from the end of trading on November 3, 2005 and the proceeds were applied to his outstanding margin loan. Later that day, Defendant acquired two (2) positions of Ten Million Euros. By the close of trading, Defendant sold his two (2)

positions of Ten Million Euros, leaving no remaining positions open, which reduced the debit balance of Defendant's margin loan to Three Hundred Twenty-five Thousand Seven Hundred Two and 22/100 ($325,702.22) Dollars. At the close of business on November 4, 2005, as a result of a sharp decline in the Euro, Defendant's International Account had a deficit of Three Hundred Twenty-five Thousand Seven Hundred Two and 22/100 ($325,702.22) Dollars.

35.     On November 7, 2005, Defendant reiterated verbally via telephone conversations and in email correspondence his commitment to pay any margin deficit to Plaintiff as a result of any loss for the trading that had taken place through the final day of trading on November 4, 2005.

36.     The trading that took place in early November, 2005 in Defendant's International Account, remained within the Defendant's equity access and overnight margin limits specified by Defendant at all times.

37.     On December 19, 2005, a demand letter was sent out by Plaintiff to Defendant demanding that the trade deficit of Three Hundred Twenty Thousand Three Hundred Eight and 05/100 ($320,308.05) Dollars, which included interest and currency fluctuations as per the close of business day on said date, in its International Account be paid immediately.

38.     On January 6, 2006, Plaintiff sent correspondence, which included documentation relating to Defendant's International Account, to Defendant's counsel, Jeroen Wendelgeist. Plaintiff also stated in the correspondence that it would be commencing formal legal proceedings to recover the trade deficit in Defendant's International Account.

39.     From January, 2006 through September, 2006, Plaintiff and Defendant could not come to a resolution regarding the trade deficit in Defendant's International Account.

40.    On September 29, 2006, a demand letter was written to Defendant's counsel, Jeroen Wendelgeist, demanding the trade deficit balance due to Plaintiff by Defendant.

41.    To date, despite due demand, Defendant has not paid the trade deficit balance in Account.

### AS AND FOR A FIRST CAUSE OF ACTION FOR
### BREACH OF CONTRACT

42.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" through "41" with the same force and effect as though more fully set forth herein.

43.    The failure by Defendant to pay the overdue and unsecured margin loan balance constitutes a breach by Defendant of its contractual obligations to Plaintiff.

44.    To date, Defendant has failed and/or refused to make any payments to Plaintiff to satisfy the trade deficit balance in its International Account, despite Plaintiff's repeated demands for payment.

45.    Based on the foregoing, Plaintiff has suffered money damages in the amount of Three Hundred Twenty-five Thousand Seven Hundred Two and 22/100 ($325,702.22) Dollars, with interest thereon at the legal rate of judgment in the State of New York from the 19th day of December, 2005, together with reasonable costs and expenses of collection, including attorneys' fees.

WHEREFORE, Plaintiff Citigroup Global Markets Inc. d/b/a Smith Barney demands judgment against Defendant, JWS 1999 Holding B.V., as follows:

(a)    money damages in the amount of $325,702.22, plus interest thereon from the 19th day of December 2005;

(b)    all costs, fees and disbursements of this action, including attorneys' fees;

- 8 -

(c)     such other, further and different relief as the Court may deem just
and equitable.

## NO JURY DEMAND

Plaintiff Citigroup Global Markets Inc. d/b/a Smith Barney demands no trial by
jury of all issues in this action.

Dated: New York, New York
       June 11, 2008

ALONSO, ANDALKAR & KAHN, P.C.

By:

CATANIA FACHER
Attorneys for Plaintiff
920 Broadway, 16th Floor
New York, New York 10010
(212) 598-5900